POLLY KELLEY *v.* C. J. McKINNEY.

1. CHANCERY PRACTICE AND PLEADINGS. *Contract.* A court of chancery will, if justice requires, rectify a contract for the sale of land, and execute it as corrected.

2. SAME. *Rehearing.* A rehearing in equity for the purpose of receiving new evidence should only be granted, upon good cause shown, to let in material or controlling evidence newly discovered, and which could not have been sooner brought forward by reasonable diligence. It is no ground for a rehearing that the proof of the opposite party, as the petitioner is advised, had undue weight on the hearing, which was a surprise to him; nor that the petitioner's own deposition had not been taken, no excuse being given for the failure to have his testimony at the hearing; nor that the petitioner has recently discovered evidence which might have been previously ascertained by reasonable diligence, or which was merely cumulative.

FROM HAWKINS.

Appeal from the Chancery Court at Rogersville. H. C. SMITH, Ch.

Kelley *v.* McKinney.

S. J. KIRKPATRICK and ROBERT HUFFMASTER for complainant.

J. P. EVANS for defendant.

COOPER, J., delivered the opinion of the court.

Bill filed October 9, 1875, to correct a contract for the sale of land, and to have the contract executed as reformed. The chancellor rendered a decree in favor of the complainant, but, upon the application of defendant, granted a rehearing, with leave to him to take additional proof. Afterwards, when the cause was reheard, the chancellor again gave the complainant the relief sought, and the defendant appealed.

The substance of the bill is, that, in the negotiations which preceded the reduction of the contract to writing, the defendant wished to sell to complainant and one Johnson, jointly, the whole tract of 180 acres, upon different parts of which she and Johnson were then living; that she refused to purchase jointly, and insisted upon buying one-half of the land separately; that the parties met on October 8, 1867, and it was agreed that complainant should buy one-half of the land for herself, and Johnson the other half, the price which each was to pay being stipulated, namely, $1,100; that McKinney, who drew the contract, so worded it as to make it a joint sale to complainant and Johnson, contrary to the agreement; that neither complainant nor Johnson, the latter being a negro who could neither read or write, understood the purport of the writing.

The contract, in the form of a bond for title, does purport to be a joint sale to complainant and Johnson, for $600 in cash, and three notes for $533.33 each, at one, two and three years. In his answer, the defendant says that the $600 were paid by complainant, and that she gave one of the notes with Johnson, and Johnson alone executed the other two notes. He admits that complainant had paid her note, and made some other small payments. It sufficiently appears that complainant and Johnson had an under- standing, before the purchase, how the land should be divided, and each took possession of one-half. In 1870, defendant, finding that Johnson would not pay for his half of the land, took control of it, and agreed that complainant might have her part of the land surveyed and laid off to her. Complainant employed a surveyor, who made a survey with a plat, but included therein about ten acres more than the one-half, because, perhaps, he ran out the land she was actually in the possession of. Complainant continued to hold possession of the land thus surveyed, and defendant of the residue. On the 15th of December, 1874, complainant and defendant came together, and complainant paid him the sum of $300, and defendant made her a conveyance of only sixty acres of the land. She seems to have received the deed at the time, with the remark that it would not do, according to one of the persons present, but afterwards refused to register it, and filed this bill.

The instrument of conveyance purports, in consideration of $1,500, to convey sixty acres of the land,

"to begin at the river, and extending out far enough to make the amount and ten acres of wood land to be laid off by the surveyor, and a plat made and attached to the deed." The instrument shows upon its face that something further was to be done to complete it, and the parties never did, in fact complete it. The rights of the parties depend, therefore, upon the original contract and the contract of the 15th December, 1874, as both should have been reduced to writing, if the writings, of which defendant was the draftsman, did not carry out the agreement of the parties.

Defendant, in his answer to the bill, and again when he comes to give his deposition on the rehearing, does not deny the preliminary conversations, as alleged in the bill, in which complainant says she insisted upon a separate purchase of her half of the land. He only insists upon the contract as signed. This fact, in connection with the admission of the answer that Johnson executed his notes alone for half the land, fairly demonstrate the truth of complainant's version of the transaction, and the contract was, perhaps unintentionally, so worded as to express a different meaning. The answer further admits, as we have seen, that the cash payment of $600 was made by complainant, and that she paid her note in 1871 or 1872. "These two payments," it says, "were in full of her undertaking." Defendant further concedes that complainant made other small payments, but says they were on Johnson's notes. Complainant was, therefore, clearly entitled to the land bought by her. The de-

fendant, ignoring the written contract drawn by himself and on which he elsewhere stands, says that for the payment of $1,133.33 made by her, complainant was to have one-third of the land. This remarkable assertion is rested upon a contract in writing, appended to the answer, between complainant and Johnson, to which defendant was no party, providing for a division of the lands between them. Whatever may have been the object of the arrangement between complainant and Johnson, and it seems to have contemplated the coming in of a brother of Johnson for a share in the land, it is clear that defendant cannot change his contract by a reference to it. Beyond all question, complainant had paid for half of the land and was entitled to it.

It seems that the land could not, for some reason, be suitably divided into exactly equal moieties, and that the surveyor included ten additional acres in the part allotted to complainant, and of which she took possession. After trying to procure a title, complainant met defendant on the 15th of December, 1874. On that occasion she paid him $300. This payment was, she says, to pay for the excess in her moiety, and to secure a title to the land surveyed to her. Defendant says in his answer that, "in December, 1374, he proposed to complainant to convey to her one-third of the land, the quantity she was to have under her original contract. The proposition was accepted by complainant. She thereby got more than she would have got under her contract with the Johnsons, because she got more than one-third of the land in

value, her part including the dwelling-house and the buildings." It will be seen that defendant, in his answer, rests the reduction of the quantity of the land conveyed to complainant, from ninety acres to sixty, upon a contract between complainant and the Johnsons, to which he was no party, and offers no explanation of the additional payment of $300 made to him by complainant on the 15th of December, 1874. By the time he gives his deposition on the rehearing he changes his base of operations, and places the reduction upon the ground that the sixty acres conveyed were one-half of the land in value. The evidence of Johnson is that the land was valued at $12.50 an acre, and that was what he was to pay for his half. And the proof shows that the parties, from the first, treated the moieties as equal in quantity as well as quality of land, in which defendant acquiesced when he resumed possession of Johnson's moiety. Precisely what took place between the parties in the interview of the 15th of December, 1874, is left in great uncertainty. It is certain that what was done was not final, and the minds of the parties never came together on any definite terms. The defendant's contention would result in not only taking from the complainant the $300 then paid, but depriving her of one-third of the land she had, as the defendant concedes, previously paid for. This would be manifestly inequitable. There is clearly no error in the final decree of the chancellor.

The court, however, erred in granting the rehearing in this case, with leave to take new proof. A re-

hearing is proper for reconsidering the testimony, or correcting improper conclusions of law, to be usually had at the same term. So, too, the court may rehear the cause for the purpose of receiving new evidence in a proper case. *Scales* v. *Nichols*, 2 Yer., 140; *Robertson* v. *Maclin*, 4 Hay., 53. But it is obvious that a rehearing for the latter purpose must be confined within rigid limits, and carefully guarded, not merely because it tends to protract litigation uselessly as in the present instance, but it opens the door to fraud and perjury. The unsuccessful litigant, finding where the shoe pinches, is · exposed to a temptation often too great for the weakness of human nature. Parties ought not, as a general rule, to be allowed to go into further proofs, but confined upon a rehearing to the testimony used, or which might have been used, on the former hearing, unless, as in a bill of review, new evidence be disclosed which could not possibly have been used before. Evidence, although newly discovered, will not suffice where the negligence of the party was the cause of its not being sooner discovered, or where it is merely cumulative. *Young* v. *Henderson*, 4 Hay., 189. The evidence ought to be material if not controlling. *Burson* v. *Dosser*, 1 Heis., 754. The petition for a re-hearing in this case merely states that the complainant's proof, as the petitioner is advised, "had undue weight on the hearing, which was a surprise to him." No decree could stand, if an affidavit of the losing party to this effect was held sufficient. It was no ground to rehear that the petitioner's own deposition might be taken, for it

was negligence not to have taken it sooner, if, in fact, it was not purposely withheld. The alleged new fact, that the land after 1874 had been given in for taxes by complainant at sixty acres, might easily have been previously ascertained, was merely cumulative, and, as the event proved, not material.

Reverse the order for rehearing, affirm the original decree, and charge the defendant, McKinney, with all the costs.